Michael Maddigan (Bar No. 163450)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars, Ste 1400
Los Angeles, CA 90067
(310) 785-4600
(310) 785-4601
michael.maddigan@hlc.com

Claude G. Szyfer (*pro hac vice* forthcoming)
Elai Katz (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000
claude.szyfer@hlc.com
elai.katz@hlc.com

Liam E. Phibbs (*pro hac vice* forthcoming)
Holden A. Steinhauer (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
liam.phibbs@hlc.com
holden.steinhauer@hlc.com

*Attorneys for Defendant California Regional Multiple Listing Service, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

COMPASS, INC.; COMPASS CALIFORNIA, INC.; and COMPASS CALIFORNIA III, INC.,

Plaintiffs,

v.

CALIFORNIA REGIONAL MULTIPLE LISTING SERVICE, INC.,

Defendant.

Case No. 5:26-cv-06121-KK

**DEFENDANT CALIFORNIA REGIONAL MULTIPLE LISTING SERVICE, INC.'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Filed concurrently with Declaration of Claude G. Szyfer; and [Proposed] Order

Date: January 14, 2027
Time: 9:30 a.m.
Courtroom: 3
Judge: Hon. Kenly Kiya Kato

Complaint Filed: October 16, 2026

# NOTICE OF MOTION AND MOTION TO STAY

PLEASE TAKE NOTICE that on January 14, 2027, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Central District of California, located at George E. Brown, Jr. Federal Building and United States Courthouse, Riverside, before the Honorable Kenly Kiya Kato, Defendant California Regional Multiple Listing Service, Inc. ("CRMLS") will and hereby does move the Court for an order (1) staying this action under the first-to-file rule and the Court's inherent authority pending resolution of the earlier-filed action *California Regional Multiple Listing Service, Inc. v. Compass, Inc.*, No. 1:26-cv-08796-MKV (S.D.N.Y.), including the Southern District of New York's ruling on Compass, Inc.'s pending motions to dismiss that action or, alternatively, to sever and transfer claims, and the Judicial Panel on Multidistrict Litigation's ruling on the pending motions to transfer for coordinated or consolidated pretrial proceedings; and (2) independently staying the claims of Plaintiffs Compass California, Inc. and Compass California III, Inc. pending arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Claude G. Szyfer and the exhibits thereto, the pleadings and records on file in this action, and such other evidence and argument as may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on Friday, November 13, 2026.

This Motion is CRMLS's first filing in this action. CRMLS brings it subject to, and without waiver of, its right to compel arbitration of the claims of Compass California, Inc. and Compass California III, Inc., and all defenses and objections available under Federal Rule of Civil Procedure 12 with respect to all three plaintiffs.

# TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION TO STAY .................. I

TABLE OF AUTHORITIES .................. IV

MEMORANDUM OF POINTS AND AUTHORITIES .................. 1

INTRODUCTION .................. 1

BACKGROUND .................. 3

A. CRMLS and Its Cooperation Rules .................. 3

B. The California Brokerages' Agreement to Arbitrate .................. 4

C. Compass's Nationwide Campaign Against MLS Cooperation Rules .................. 4

D. CRMLS Files First in New York, and Compass Files a Mirror-Image Action Here .................. 6

E. The Forum Dispute Is Already Before the First-Filed Court .................. 6

F. Pending Centralization Before the Judicial Panel on Multidistrict Litigation 8

LEGAL STANDARD .................. 9

ARGUMENT .................. 10

I. THIS ACTION SHOULD BE STAYED UNDER THE FIRST-TO-FILE RULE .................. 10

A. CRMLS Filed in the S.D.N.Y. Before Compass Filed Here .................. 10

B. The Parties in the Two Cases Are Substantially Similar .................. 11

C. The Issues in the Two Cases Are Substantially Similar .................. 12

D. The S.D.N.Y. Court Should Decide Whether Any Exception Applies, and None Does. .................. 12

E. A Stay Is the Appropriate Remedy .................. 15

II. THE LANDIS FACTORS INDEPENDENTLY SUPPORT A STAY .................. 15

A. A Stay Will Not Damage Compass .......... 15

B. Proceeding in Two Forums Would Expose CRMLS to Inconsistent Obligations .......... 16

C. A Stay Will Promote the Orderly Course of Justice .......... 16

D. The Requested Stay Is of Reasonable Duration .......... 17

E. The Pending JPML Motion Further Supports a Stay .......... 17

III. THE CALIFORNIA BROKERAGES' CLAIMS MUST BE STAYED UNDER SECTION 3 OF THE FAA .......... 18

A. The California Brokerages Agreed in Writing to Arbitrate .......... 18

B. Every Claim Falls Within the Arbitration Clause .......... 18

C. Any Dispute as to Arbitrability Goes to the Arbitrator. .......... 19

D. CRMLS Has Not Waived Arbitration .......... 20

E. The Stay Is Mandatory as to the California Brokerages and Warranted as to Compass, Inc .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## Cases

*Abovepeer, Inc. v. Recording Indus. Ass'n of Am.*,
166 F. Supp. 2d 655, 661 (N.D.N.Y. 2001) .......... 10

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622, 625 (9th Cir. 1991) .......... passim

*Ariz. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*,
No. 1:26-cv-09253 (S.D.N.Y. 2026) .......... 6

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011, 1014–15 (9th Cir. 2023) .......... 9, 18

*Barnes & Noble, Inc. v. LSI Corp.*,
823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) .......... 12, 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849, 856 (9th Cir. 2022) .......... 16

*Brennan v. Opus Bank*,
796 F.3d 1125, 1130 (9th Cir. 2015) .......... 17

*California Regional Multiple Listing Service, Inc. v. Compass, Inc.*,
No. 1:26-cv-08796-MKV (S.D.N.Y.) .......... 1

*Capitol Records, Inc. v. Optical Recording Corp.*,
810 F. Supp. 1350, 1353 (S.D.N.Y. 1992) .......... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126, 1130 (9th Cir. 2000) .......... 8

*Church of Scientology of Cal. v. U.S. Dep't of the Army*,
611 F.2d 738, 750 (9th Cir. 1979) .......... 15

*CMAX, Inc. v. Hall*,
300 F.2d 265, 268 (9th Cir. 1962) .......... 8

*Coinbase, Inc. v. Suski*,
602 U.S. 143, 151–52 (2024) .......... 17

*Compass, Inc. v. Zillow, Inc.*,
No. 25-cv-05201 (S.D.N.Y. 2026) .......... 5

*Cortes v. Victoria's Secret Stores, LLC*, 2020 WL 1139657, at *5 n.1 (N.D. Cal. Mar. 9, 2020)....1

*Dish Network, L.L.C. v. Am. Broad. Cos.*, 2012 WL 2719161, at *4 (S.D.N.Y. July 9, 2012) ....12

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000) ....9

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998) ....12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ....9, 17

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) ....9, 13

*Juniper Networks, Inc. v. Mosaid Techs. Inc.*, No. C 11–6264 PJH, 2012 WL 1029572, at *2 (N.D. Cal. Mar. 26, 2012) ....11

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018)....1

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)....1, 8, 11

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ....8

*Las Vegas 26 Holdings, LLC v. Churchill MRA Funding I, LLC*, No. CV 23-10742-JFW, 2024 WL 3915151, at *2 (C.D. Cal. Aug. 14, 2024)...10, 13, 15

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)....15, 16

*M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, No. C03–3082 SBA, 2003 WL 24056263, at *3–5 (N.D. Cal. Oct. 27, 2003) ....12

*Martin v. Yasuda*, 829 F.3d 1118, 1125–26 (9th Cir. 2016)....18

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19 (2022) ....9, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24–25 (1983) ..................... 9

*Navigators Underwriting Agency Ltd. v. Micron Tech., Inc.*,
427 F. Supp. 3d 506 (S.D.N.Y. 2019) ..................... 13

*Ontel Prods., Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ..................... 11

*Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.*,
No. CIV 10-3134 KJM EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ..................... 10

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93, 96 (9th Cir. 1982) ..................... 2, 9

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63, 68–70 (2010) ..................... 17

*Rogoff v. T-Mobile USA, Inc.*,
No. 2:21-CV-01157-BJR, 2021 WL 5279921 (W.D. Wash. Nov. 12, 2021) ..................... 15

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716, 721 (9th Cir. 1999) ..................... 17

*Smith v. Spizzirri*,
601 U.S. 472, 478 (2024) ..................... 2, 8, 18

*ThePLS.com, LLC v. Nat'l Ass'n of Realtors*,
No. 1:26-mc-00525-GHW (S.D.N.Y.) ..................... 6, 13

*ThePLS.com, LLC v. Nat'l Ass'n of Realtor*s,
No. 2:25-cv-5971-JWH-E (C.D. Cal.) ..................... 6

*Ward v. Follett Corp.*,
158 F.R.D. 645, 648 (N.D. Cal. 1994) ..................... 9

*Wolff v. Trump*,
2026 WL 1453606 (S.D.N.Y. May 22, 2026) ..................... 13

*Zillow Grp., Inc. v. Midwest Real Est. Data LLC*,
No. 1:26-cv-05451, ECF No. 139 (N.D. Ill. Sept. 15, 2026) ..................... 16

**Statutes**

28 U.S.C. § 1404(a) .......... 2, 5

28 U.S.C. § 1407 .......... 8, 15

9 U.S.C. § 2 .......... 8

9 U.S.C. § 3 .......... passim

9 U.S.C. § 4 .......... 2

**Rules**

Fed. R. Civ. Proc. 45(c)(1) .......... 6

Federal Rule of Civil Procedure 12 .......... 1, 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Court should stay this action because this same dispute is already pending in an earlier-filed action in another federal court. On October 5, 2026, California Regional Multiple Listing Service, Inc. ("CRMLS")—the defendant here—filed suit against Compass, Inc.—the plaintiff here—in Compass's home district, the Southern District of New York, seeking a declaration that certain of the rules by which CRMLS operates its multiple listing service are lawful under Section 1 of the Sherman Act and California's Cartwright Act. Compl. at ¶¶ 1, 76–89, *Cal. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-08796-MKV (S.D.N.Y. 2026) (the "S.D.N.Y. Action"), ECF No. 1 ("N.Y. Compl.").[1] Eleven days later, Compass and two wholly owned subsidiaries filed this action, challenging the same rules under the same two statutes. Compl. at ¶¶ 25, 27–29, 85–100, ECF No. 1 ("Compl.").

The first-to-file rule requires a stay: the S.D.N.Y. Action was filed first, the parties are similar, and the issues are identical. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). New York is where Compass is headquartered and from where it directed a nationwide demand-letter campaign that produced both suits. Compl. at ¶ 26; S.D.N.Y. Action, ECF No. 13 ("N.Y. Am. Compl.") at ¶¶ 21, 24, 65–70. The S.D.N.Y. Action now also includes OneKey® MLS LLC ("OneKey"), New York's largest MLS, which received a virtually identical demand letter and is not a party here. The S.D.N.Y. Action is also related to a separate declaratory judgment action brought by other MLSs that received the same demand. *Id.* at ¶¶ 4, 7, 20, 109–113; S.D.N.Y. Action, ECF Nos. 11, 12, 17.

---

[1] The Court may take judicial notice of the existence and content of the filings in the S.D.N.Y. Action. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018); *Cortes v. Victoria's Secret Stores, LLC*, 2020 WL 1139657, at *5 n.1 (N.D. Cal. Mar. 9, 2020). To avoid burdening the Court, CRMLS did not include copies of each complaint referenced in this Motion with this filing. CRMLS can provide those complaints at the Court's request.

Balance-of-convenience arguments should be heard by the first-filed court; and it is already doing so. Compass asked the Honorable Mary Kay Vyskocil for leave to move to dismiss the S.D.N.Y. Action or, alternatively, to sever and transfer claims to this District, raising the same anticipatory-suit and balance-of-convenience arguments it would raise here. S.D.N.Y. Action, ECF Nos. 10, 16. CRMLS opposed. S.D.N.Y. Action, ECF Nos. 12, 15, 17. On November 19, 2026, Judge Vyskocil ordered full briefing, to be completed by December 24, 2026. Scheduling Order at 2, S.D.N.Y. Action, ECF No. 18. Proceeding here in parallel would invite the duplicative litigation and conflicting rulings—on both the forum question and the merits—that comity is meant to prevent. *See Alltrade*, 946 F.2d at 628 (the second-filed court "is not required to duplicate th[e] inquiry" into balance-of-convenience) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982)).

The claims of the two subsidiary plaintiffs—Compass California, Inc. and Compass California III, Inc. (the "California Brokerages")—must also be stayed under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. The California Brokerages are CRMLS participants bound by CRMLS's End User License Agreement ("EULA"), which requires arbitration of "all disputes and claims relating in any way to, or arising out of, this AGREEMENT, the MLS, the Rules and Policies, . . . or any other alleged act or omission by YOU or CRMLS," and delegates questions of arbitrability to the arbitrator. EULA §§ XVII(A), XVIII(E); Compl. at ¶¶ 27–29. Where a party requests a stay pending arbitration, the stay is mandatory. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Both actions are at the pleading stage, Compass has not sought preliminary relief, and a stay will cause it no cognizable harm. The Court should stay this action pending the S.D.N.Y. court's resolution of Compass's forum motions and—if that

court retains the case—final resolution of the S.D.N.Y. Action, and should stay the California Brokerages' claims pending arbitration.[2]

## BACKGROUND

### A. CRMLS and Its Cooperation Rules.

CRMLS is a California nonprofit mutual benefit corporation headquartered in Chino Hills, California, with approximately 94,000 subscribers; an additional 50,000 agents, brokers, and appraisers can access its listing information through data-share agreements with other California-based MLSs. Compl. at ¶ 30; N.Y. Am. Compl. at ¶¶ 3, 19. CRMLS operates a broker cooperative: participants contribute their for-sale properties in exchange for access to everyone else's. N.Y. Am. Compl. at ¶¶ 10, 33.

Access to CRMLS is conditioned on accepting the EULA, the terms of which require users to agree to place all for-sale properties subject to exclusive agreements into the MLS, "consistent with CRMLS' Rules and Policies," to abide by "CRMLS' current Rules and Citation Policy," and to "fully comply with all CRMLS mandatory listing submission rules." EULA §§ I(A), V(A), XI(B). CRMLS Rule 7.9, the focus of both lawsuits, requires that a property subject to an exclusive right-to-sell or seller-reserved listing agreement be submitted to the MLS within one business day of being marketed to the public. N.Y. Am. Compl. at ¶¶ 14, 46; Compl. at ¶ 54. CRMLS Rule 7.9 implements the National Association of REALTORS® ("NAR") Clear Cooperation Policy ("CCP"), adopted in November 2019. N.Y. Am. Compl. at ¶¶ 44–46.

CRMLS's Rules and Policies do not require uniform property submission to the MLS for cooperation. Under CRMLS Rule 7.9.1 (the "No Cooperation Listing"),

---

[2] This Motion is CRMLS's first filing in this Court. CRMLS expressly reserves, and does not waive, its right to compel the California Brokerages to arbitrate their claims under 9 U.S.C. § 4; its position that Compass's claims may properly be dismissed under the first-to-file rule or transferred to the Southern District of New York under the first-to-file rule and 28 U.S.C. § 1404(a); and all defenses and objections available under Federal Rule of Civil Procedure 12.

a seller may keep a for-sale property out of the MLS if there is no public marketing. *Id.* at ¶¶ 15, 56; Compl. at ¶ 74. Nor do CRMLS Rules and Policies require MLS submission for properties that are subject to non-exclusive commission agreements. Further, CRMLS's "Coming Soon" status permits public marketing for up to 21 days without accruing days in MLS. N.Y. Am. Compl. at ¶¶ 55, 57, 59–61; Compl. at ¶¶ 17, 74.

**B. The California Brokerages' Agreement to Arbitrate.**

As CRMLS participants, the California Brokerages agreed to be bound by EULA Section XVII(A), which requires final and binding arbitration under the American Arbitration Association Commercial Arbitration Rules of "all disputes and claims relating in any way to, or arising out of, this AGREEMENT, the MLS, the Rules and Policies, . . . or any other alleged act or omission by YOU or CRMLS." EULA § XVII(A). Section XVIII(E) further provides that "[a]ny Participant who enters this AGREEMENT binds both themselves individually and any brokerage or business entity for which they are listed as the Designated Broker in the MLS or a Designated Officer per any California Department of Real Estate filings and records." *Id.* § XVIII(E).

**C. Compass's Nationwide Campaign Against MLS Cooperation Rules.**

Compass, Inc. ("Compass") is a Delaware corporation headquartered in New York, New York, and the largest residential real estate brokerage in the United States. Compl. at ¶ 26; N.Y. Am. Compl. at ¶¶ 21, 39–40. Through an intermediate subsidiary, it wholly owns both California Brokerages, which participate in CRMLS. Compl. at ¶¶ 27–29. Through its "See It First on Compass" program, Compass first markets its home-seller clients' properties without MLS submission. Compl. at ¶¶ 2, 16, 57; N.Y. Am. Compl. at ¶ 42. If a property does not sell, Compass markets it as "Coming Soon" only on Compass.com and Redfin.com. Compl. at ¶¶ 58–60; N.Y. Am. Compl. at ¶ 42. Only if a property still fails to sell after the first two phases does

Compass then submit the listing to the MLS for cooperation. Compl. at ¶ 61; N.Y. Am. Compl. at ¶ 42.

On September 8, 2026, Compass's outside counsel sent CRMLS and OneKey substantively identical demand letters, requiring each to confirm by 5:00 p.m. ET on October 6, 2026, that it would stop fining or punishing real estate professionals for publicly marketing "office exclusive" listings, or be "named as a defendant in a federal antitrust lawsuit." N.Y. Am. Compl. at ¶¶ 6–7, 65–67 & Exs. A, F; Letter to Judge M. Vyskocil from C. Szyfer at 1, S.D.N.Y. Action, ECF No. 17. Under NAR rules, which serve as the basis for the CCP and CRMLS Rules 7.9 and 7.9.1, an "office exclusive" is a for-sale property listing that is shared only within a brokerage firm and not publicly marketed outside the firm. Nat'l Ass'n of Realtors, *Office Exclusive Listings / Pre-Marketing Guidance*, https://www.nar.realtor/about-nar/policies/mls-policy/office-exclusive-listings/pre-marketing-guidance.

Compass copied the Department of Justice's Antitrust Division and the Federal Trade Commission's Bureau of Competition in each demand letter; included document-preservation notices for each MLS; and pledged that it "will spend millions of dollars to sue" the recipient "and other MLSs." N.Y. Am. Compl. at ¶¶ 69–70; Letter to Judge M. Vyskocil from C. Szyfer at 1-2, S.D.N.Y. Action, ECF No. 17. Numerous other MLSs received essentially the same demand letter. Letter to Judge M. Vyskocil from C. Szyfer at 1-2, S.D.N.Y. Action, ECF No. 17.

On September 30, 2026, before an audience of over 900 people attending the Conference of Multiple Listing Services' annual meeting, Compass's CEO publicly stated that Compass would spend millions to sue MLSs across the country in mid-October. N.Y. Am. Compl. at ¶ 12.

Compass's challenge to MLS cooperation rules is not new. In November 2024, Compass demanded that CRMLS remove the Cooperation Rules or face an imminent antitrust lawsuit. N.Y. Am. Compl. at ¶¶ 16, 76 & Exs. D–E. Compass has since litigated related challenges elsewhere, including in the Southern District of

New York, where it chose to challenge Zillow's Listing Access Standards and where its motion for a preliminary injunction was denied before Compass voluntarily dismissed the case. *Id.* at ¶¶ 49, 80 (citing *Compass, Inc. v. Zillow, Inc.*, No. 25-cv-05201 (S.D.N.Y. 2026)); *see also id.* at ¶ 79 (describing *Compass, Inc. v. Nw. Multiple Listing Serv.*, No. 2:25-cv-00766 (W.D. Wash. 2025)).

**D. CRMLS Files First in New York, and Compass Files a Mirror-Image Action Here.**

CRMLS rejected Compass's demand in writing on September 30, 2026. N.Y. Am. Compl. at ¶ 71 & Ex. C; Compl. at ¶ 84. On October 5, 2026, CRMLS filed the S.D.N.Y. Action, seeking declarations that the Cooperation Rules do not violate Section 1 of the Sherman Act or the Cartwright Act, and related injunctive relief. N.Y. Compl. at ¶¶ 1, 76–89. On October 16, 2026, Compass, Inc. and the California Brokerages filed this action, asserting claims under Section 1 of the Sherman Act (Counts I–II) and the Cartwright Act (Count III), together with claims under California's Unfair Competition Law (Count IV) and for intentional interference (Counts V–VI), all directed at CRMLS's adoption and enforcement of Rules 7.8 and 7.9. Compl. at ¶¶ 25, 85–121. Compass's complaint concedes that CRMLS's action was filed first. *Id.* at ¶ 84.

**E. The Forum Dispute Is Already Before the First-Filed Court.**

On October 20, 2026, Compass requested a pre-motion conference in the S.D.N.Y. Action, seeking leave to file a motion to dismiss or, alternatively, to transfer that action to this District under 28 U.S.C. § 1404(a), and to stay proceedings pending that motion. Letter to Judge M. Vyskocil from N. Eimer, S.D.N.Y. Action, ECF No. 10. Compass argued that CRMLS's suit was an improper anticipatory filing and that the balance of convenience favors California. *Id.* at 2–3. Two days later, Compass notified the S.D.N.Y. court that other MLSs had filed a similar declaratory action against it in that District, which they designated as a related action. Letter to Judge M. Vyskocil from N. Eimer, S.D.N.Y. Action, ECF No. 11 (citing *Ariz. Reg'l*

*Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-09253 (S.D.N.Y. 2026) (the "ARMLS Action")).[3] CRMLS opposed Compass's request for a pre-motion conference, stating that it would seek relief in this Court under the first-to-file rule and explaining that "[t]he orderly course is for [the S.D.N.Y.] Court, as the court of first filing, to decide which action proceeds." Letter to Judge M. Vyskocil from C. Szyfer at 3, S.D.N.Y. Action, ECF No. 12.

On October 27, 2026, CRMLS filed an amended complaint as of right, adding OneKey as a co-plaintiff and a declaratory claim under New York's Donnelly Act. N.Y. Am. Compl. at ¶¶ 4, 20, 109–113; S.D.N.Y. Action, ECF No. 15 at 1. In a letter to the S.D.N.Y. court, CRMLS also noted that Compass had moved to quash subpoenas served on it in a separate action,[4] arguing that because its CEO and other top executives resided in New York City, seeking the executives' testimony in Los Angeles "would be in direct violation of Fed. R. Civ. Proc. 45(c)(1)." Letter to Judge M. Vyskocil from C. Szyfer at 2, S.D.N.Y. Action, ECF No. 15 (quoting *In re Subpoena Issued in ThePLS.com, LLC v. Nat'l Ass'n of Realtors*, No. 1:26-mc-00525-GHW (S.D.N.Y.), ECF No. 2 at 3 & n.1, 7 n.4).

On October 30, 2026, Compass "renew[ed] and supplement[ed]" its request for a pre-motion conference in the S.D.N.Y. Action, now seeking to dismiss the claims brought by both CRMLS and OneKey or, alternatively, to sever CRMLS's claims and transfer them to this District. Letter to Judge M. Vyskocil from N. Eimer, S.D.N.Y. Action, ECF No. 16. CRMLS and OneKey opposed on November 4, 2026. Letter to Judge M. Vyskocil from C. Szyfer, S.D.N.Y. Action, ECF No. 17.

On November 19, 2026, Judge Vyskocil entered a Scheduling Order in both the S.D.N.Y. Action and the related ARMLS Action denying the requests for pre-motion conferences and directing Compass to file its contemplated motions seeking

[3] The Court may take judicial notice of the existence and content of the filings in the ARMLS Action. *See supra* n.1.

[4] The separate action is pending in this District. *See ThePLS.com, LLC v. Nat'l Ass'n of Realtors*, No. 2:25-cv-5971-JWH-E (C.D. Cal.).

dismissal or, in the alternative, severance and transfer of certain claims on or before December 3, 2026. Scheduling Order, S.D.N.Y. Action, ECF No. 18. The parties are now engaged in substantive briefing on those motions before the first-filed court, and will complete such briefing on December 24, 2026.

**F. Pending Centralization Before the Judicial Panel on Multidistrict Litigation.**

Against this procedural backdrop, on November 12, 2026, Compass sued 15 additional MLSs in various districts across the country. *See* Compl., *Compass, Inc. v. Ariz. Reg'l Multiple Listing Serv., Inc.*, No. 2:26-cv-10493 (D. Ariz. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Combined L.A./Westside MLS, Inc.*, No. 2:26-cv-13239 (C.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. BridgeMLS, Inc.*, No. 4:26-cv-13647 (N.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. MLSListings Inc.*, No. 5:26-cv-13652 (N.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Bay E. Ass'n of REALTORS®*, No. 4:26-cv-13653 (N.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Contra Costa Ass'n of REALTORS®*, No. 4:26-cv-13655 (N.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. San Diego Multiple Listing Serv., Inc.*, No. 3:26-cv-06446-BAS-JLB (S.D. Cal. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Metrolist, Inc.*, No. 1:26-cv-06027 (D. Colo. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. My Fla. Reg'l MLS, Inc.*, No. 6:26-cv-02651 (M.D. Fla. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*, No. 0:26-cv-04807 (D. Minn. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. OneKey MLS LLC*, No. 2:26-cv-07323 (E.D.N.Y. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Triangle MLS, Inc.*, No. 5:26-cv-00906-BO-KS (E.D.N.C. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. N.C. Reg'l MLS, L.L.C.*, No. 7:26-cv-00450-D (E.D.N.C. Nov. 12, 2026), ECF No. 1; Compl., *Compass, Inc. v. Carolina Multiple Listing Servs., Inc.*, No. 3:26-cv-00971 (W.D.N.C. Nov. 12, 2026), ECF No.

1; Compl., *Compass, Inc. v. Hous. Realtors Info. Serv., Inc.*, No. 4:26-cv-09930 (S.D. Tex. Nov. 12, 2026), ECF No. 1.

CRMLS and the other defendants in those actions (collectively, the "MLS Defendants") have moved to transfer the respective actions to the Southern District of New York pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings. Mot. for Transfer of Actions at 1, *In re Multiple Listing Serv. Rules Antitrust Litig.*, Case Pending No. 67 (J.P.M.L. Nov. 23, 2026), ECF No. 1 ("JPML Mot."). That motion is pending before the Judicial Panel on Multidistrict Litigation ("JPML").

## LEGAL STANDARD

**First-to-file rule.** A district court may transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court. *Alltrade*, 946 F.2d at 623. Courts consider (1) the chronology of the actions, (2) the similarity of the parties, and (3) the similarity of the issues. *Id.* at 625. The rule "should not be disregarded lightly," and the parties and issues need only be substantially similar, not identical. *Kohn*, 787 F.3d at 1239–41 (quoting *Alltrade*, 946 F.2d at 625). Exceptions include "bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628.

**Inherent power to stay.** Courts have an inherent power to stay proceedings "incidental to the power inherent . . . to control the disposition of the causes on [a] docket with economy of time and effort." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When deciding to stay proceedings, courts weigh "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

**Stay pending arbitration.** The FAA makes written arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Where a suit involves an arbitrable issue, the court must stay the action on a party's application. 9 U.S.C. § 3;

*Smith*, 601 U.S. at 478. The court determines whether a valid agreement to arbitrate exists and whether it encompasses the dispute, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000), unless the parties have "clearly and unmistakably" delegated those questions to the arbitrator, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Arbitration agreements are enforced like any other contract, without a special rule favoring arbitration, *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19 (2022); *see Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023), but ambiguities as to scope may still be resolved in favor of arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), and the party resisting arbitration bears the burden of proving that the claims are unsuitable for arbitration, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

## ARGUMENT

### I. THIS ACTION SHOULD BE STAYED UNDER THE FIRST-TO-FILE RULE

The Court should stay this matter because each element of the first-to-file rule is satisfied. And the Ninth Circuit's guidance, that the first-filed court should resolve convenience arguments and exceptions to the rule, applies with particular force here, where those arguments are already being briefed in the S.D.N.Y. court.

#### A. CRMLS Filed in the S.D.N.Y. Before Compass Filed Here.

CRMLS filed the S.D.N.Y. Action on October 5, 2026; Compass filed this action on October 16, 2026. N.Y. Compl.; Compl.; N.Y. Am. Compl. at ¶ 85. Compass concedes the sequence. Compl. at ¶ 84.

CRMLS's October 27 amended complaint does not reset that date because when "determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). The amended complaint did not substantively change the claims against Compass,

and when or how parties are added to the first-filed action is irrelevant to chronology. *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) (citing *Pacesetter*, 678 F.2d at 96 n.3).[5]

**B. The Parties in the Two Cases Are Substantially Similar.**

The first-to-file rule "is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.*, No. CIV 10-3134 KJM EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) (citation omitted). CRMLS and Compass are adverse in both actions.

The joinder here of the California Brokerages does not defeat similarity. Affiliates under common control satisfy the substantial-similarity standard. *See Las Vegas 26 Holdings, LLC v. Churchill MRA Funding I, LLC*, No. CV 23-10742-JFW, 2024 WL 3915151, at *2 (C.D. Cal. Aug. 14, 2024) (staying action in favor of earlier-filed S.D.N.Y. action even though plaintiff was not a party there, because its 100% owner and sole managing member was). The California Brokerages are wholly owned subsidiaries, represented by the same counsel, and were added as parties only after the S.D.N.Y. Action was filed.[6] Compl. at ¶¶ 27–29; Letter to Judge M. Vyskocil from C. Szyfer at 2, S.D.N.Y. Action, ECF No. 12. Compass owns both subsidiaries, directs the marketing program that they implement, and made the demands that produced both suits; the subsidiaries assert no claim or injury distinct from the parent's, and every count is pleaded jointly on behalf of "Compass." Compl. at ¶¶ 2, 16, 27–29, 57–61; N.Y. Am. Compl. at ¶¶ 6, 42, 65. Their interests are fully represented by Compass in the S.D.N.Y. Action, and their own claims belong in arbitration in any event. *See* Part III, *infra*.

---

[5] Moreover, because the amendment added a co-plaintiff and not a new defendant, the situation here raises none of the concerns addressed in cases declining to extend first-filed priority to later-added defendants. *Cf. Abovepeer, Inc. v. Recording Indus. Ass'n of Am.*, 166 F. Supp. 2d 655, 661 (N.D.N.Y. 2001).

[6] Indeed, Compass failed to include any mention of the California Brokerages in its original demand letter to CRMLS. *See* S.D.N.Y. Action, ECF No. 1-1.

OneKey's presence in the S.D.N.Y. Action does not change the analysis. The first-to-file rule does not require identical parties, and the overlap between CRMLS and Compass is complete and sufficient. *Pac. Coast Breaker*, 2011 WL 2073796, at *3.

**C. The Issues in the Two Cases Are Substantially Similar.**

Both this action and the S.D.N.Y. Action turn on the same, single question: whether CRMLS Rule 7.9 violates Section 1 of the Sherman Act and the Cartwright Act. N.Y. Am. Compl. at ¶¶ 94–108; Compl. at ¶¶ 85–100. Compass's Counts I through III are the mirror image of the first-filed declaratory relief that CRMLS seeks in the S.D.N.Y. Action, as Compass's own description of the two actions confirms. Letter to Judge M. Vyskocil from N. Eimer at 2, S.D.N.Y. Action, ECF No. 10.[7] Counts IV through VI depend entirely on the antitrust counts, Compl. at ¶¶ 102, 112, 119, and additional claims do not defeat substantial similarity where they turn on the same core issue, *Kohn*, 787 F.3d at 1240–41.

**D. The S.D.N.Y. Court Should Decide Whether Any Exception Applies, and None Does.**

Compass's principal arguments against first-filed priority—that CRMLS's suit was anticipatory, and that the balance of convenience favors California—are pending before Judge Vyskocil in the S.D.N.Y. Action, and the parties are now briefing the issues. Letter to Judge M. Vyskocil from N. Eimer at 2-3, S.D.N.Y. Action, ECF No. 10; Letter to Judge M. Vyskocil from N. Eimer at 2-3, S.D.N.Y. Action, ECF No. 16; Scheduling Order, S.D.N.Y. Action, ECF No. 18. Deciding the same questions here would waste judicial resources and risk conflicting forum rulings. Ninth Circuit law directs that balance-of-convenience arguments should normally be addressed to the first-filed court, *Alltrade*, 946 F.2d at 628, and district courts in this

[7] Compass's challenge to Rule 7.8 is derivative of the same claim: Compass alleges that once a listing must be submitted, "the agent and homeowner must follow hundreds of CRMLS restrictions," Compl. at ¶ 4, and the operative restriction it challenges is Rule 7.9, *see id.* at ¶¶ 14, 54.

Circuit apply the same deference to other potential exceptions. *See Juniper Networks, Inc. v. Mosaid Techs. Inc.*, No. C 11–6264 PJH, 2012 WL 1029572, at *2 (N.D. Cal. Mar. 26, 2012) (first-filed court "should normally weigh the balance of convenience and any other factors that might create an exception"). Courts in the Southern District of New York apply the same principle. *E.g.*, *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies").

In any event, no exception applies. Compass has argued that the S.D.N.Y. Action is an anticipatory suit and emphasized the timing of CRMLS's filing relative to its demand letters. *See* Letter to Judge M. Vyskocil from N. Eimer at 2, S.D.N.Y. Action, ECF No. 10. But the anticipatory-suit exception is discretionary and turns on equitable considerations. *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998). It must be balanced against the purposes of the Declaratory Judgment Act, which is an appropriate vehicle to "alleviate the necessity of waiting indefinitely for a [party] to file an infringement action." *Id.* at 272 (patent context) (citation omitted). Otherwise, a defendant in a declaratory judgment action could *always* defeat the first-to-file rule simply by suing elsewhere. *See M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, No. C03–3082 SBA, 2003 WL 24056263, at *3–5 (N.D. Cal. Oct. 27, 2003) (dismissing California action in favor of earlier New York declaratory action). Declaratory actions "are always, to a degree, anticipatory," and the inquiry turns on the totality of events. *Dish Network, L.L.C. v. Am. Broad. Cos.*, 2012 WL 2719161, at *4 (S.D.N.Y. July 9, 2012). Here, the totality of the circumstances defeats any inference of improper anticipation.

*First*, this was no sudden race to the courthouse. The central dispute here between CRMLS and Compass is nearly two years old: Compass demanded in November 2024 that CRMLS abandon the rules, threatened suit in January 2025, was rebuffed, and did not sue. N.Y. Am. Compl. at ¶¶ 16, 76; Letter to Judge M. Vyskocil

from C. Szyfer at 1, S.D.N.Y. Action, ECF No. 12. CRMLS explained then that it faced antitrust exposure either way: Compass threatened suit if CRMLS enforced its rules, while abandoning them to favor a "single, market-impacting brokerage firm" would "subject CRMLS to potential significant antitrust liability." S.D.N.Y. Action, ECF Nos. 1-5 at 2, 4, 8.

*Second*, CRMLS has an independent need for the declaration sought in the S.D.N.Y. Action. If CRMLS stops enforcing its Cooperation Rules, CRMLS risks NAR penalties, including loss of its charter; if CRMLS capitulates to Compass's demands, it faces antitrust claims from buyers and buyer agents. N.Y. Am. Compl. at ¶¶ 95, 101. The Declaratory Judgment Act protects a party facing precisely such a dilemma. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) ("the mere potential of future litigation would not render a declaratory judgment suit 'anticipatory'").

*Third*, CRMLS did not engage in forum shopping. CRMLS sued Compass in Compass's home jurisdiction, where Compass is headquartered and from where it directs its strategy—not in a forum with "only a slight connection" to the dispute. *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992); N.Y. Am. Compl. at ¶¶ 21, 24–25; *see Barnes & Noble*, 823 F. Supp. 2d at 992–93 (no forum shopping where declaratory plaintiff sued in district where defendant was headquartered). Compass itself chose the Southern District of New York to challenge Zillow over listing standards affecting the same marketing program. N.Y. Am. Compl. at ¶ 80. And Compass has told that District that its central executive witnesses reside in New York City and that deposing them in Los Angeles would violate Rule 45. S.D.N.Y. Action, ECF No. 15 at 2; *In re Subpoena Issued in ThePLS.com, LLC v. Nat'l Ass'n of Realtors*, No. 1:26-mc-00525-GHW (S.D.N.Y.), ECF No. 2 at 3 & n.1, 7 n.4.

*Fourth*, CRMLS did not engage in gamesmanship. The authorities on which Compass has relied in the S.D.N.Y. Action are distinguishable. CRMLS did not

delay proceedings through feigned negotiations but, rather, promptly rejected Compass's demand in writing. N.Y. Am. Compl. at ¶ 71. *See* Letter to Judge M. Vyskocil from C. Szyfer at 2, S.D.N.Y. Action, ECF No. 12 (distinguishing *Navigators Underwriting Agency Ltd. v. Micron Tech., Inc.*, 427 F. Supp. 3d 506 (S.D.N.Y. 2019), and *Wolff v. Trump*, 2026 WL 1453606 (S.D.N.Y. May 22, 2026)).

**E. A Stay Is the Appropriate Remedy.**

Where the first-to-file rule applies, the Court may dismiss, stay, or transfer the other action. *Alltrade*, 946 F.2d at 623. Although dismissing Compass's claims is warranted because the S.D.N.Y. court can resolve the entire dispute between CRMLS and Compass, *see Intersearch*, 544 F. Supp. 2d at 963–64, a stay is appropriate where the first-filed action may itself be dismissed and dismissal of the second action could prejudice a party. *See Alltrade*, 946 F.2d at 628–29. A stay preserves Compass's claims should the S.D.N.Y. court decline jurisdiction, while avoiding parallel proceedings if it does not. CRMLS proposes that the parties file a joint status report within 14 days of any ruling by the S.D.N.Y. court on Compass's pending motions. *See, e.g., Las Vegas 26 Holdings*, 2024 WL 3915151, at *2 (directing joint status report following resolution of related S.D.N.Y. action).

**II. THE LANDIS FACTORS INDEPENDENTLY SUPPORT A STAY**

The Court's inherent authority is a separate basis through which it may stay this action, and each of the *Landis* factors supports a stay.

**A. A Stay Will Not Damage Compass.**

Compass will suffer no cognizable harm from a stay. Both actions are at the pleading stage, this action was filed only eleven days after the S.D.N.Y. Action, and no schedule has been set here. Compass has not moved for a preliminary injunction, and it will not lose its day in court—it may assert its claims in the S.D.N.Y. Action, and this action could resume if that court declines jurisdiction.

**B. Proceeding in Two Forums Would Expose CRMLS to Inconsistent Obligations.**

Having both actions proceed risks conflicting forum rulings, as both courts are being asked to decide which action should proceed. A declaration in the S.D.N.Y. Action that Rule 7.9 is lawful, and an inconsistent judgment here that it is not, would subject CRMLS to conflicting obligations regarding the enforcement of a rule that governs more than 94,000 subscribers, as well as potential NAR penalties, including a loss of CRMLS's charter. N.Y. Am. Compl. at ¶¶ 19, 95. Those risks are concrete. CRMLS warned Compass in 2024 that its demands would expose CRMLS to claims by buyers misled about Days on Market, unrepresented buyers denied IDX access, and consumers forced to hire agents to view a private listing network, while abandoning the rules would put CRMLS at a severe competitive disadvantage to neighboring MLSs. S.D.N.Y. Action, ECF Nos. 1-5 at 3–6. Inconsistent judgments from two forums would only compound that two-sided exposure.

**C. A Stay Will Promote the Orderly Course of Justice.**

A stay here would simplify the issues and avoid duplicative proceedings. Otherwise, two federal courts would apply Section 1 of the Sherman Act to the same MLS rule, likely on the same record and with the same witnesses. Moreover, the S.D.N.Y. court also has before it a broader set of related disputes arising from Compass's demand campaign: OneKey's claims and the related ARMLS Action involving seven additional MLSs. S.D.N.Y. Action, ECF Nos. 11, 12, 15, 17; N.Y. Am. Compl. at ¶¶ 4, 20. Thus, nine different MLSs are before the S.D.N.Y. court, while the issues here affect just one.

Further, Compass's New York-based CEO promised to direct from its New York headquarters a nationwide campaign of MLS litigation involving the same issues. N.Y. Am. Compl. at ¶¶ 12, 69, 83. Where, as here, a single forum can coordinate discovery of the central witnesses—Compass executives, who have told the Southern District of New York that they cannot be compelled to testify in Los

Angeles, S.D.N.Y. Action, ECF No. 15 at 2—the courts should stay the later-filed action. *See generally Las Vegas 26 Holdings*, 2024 WL 3915151, at *2.

**D. The Requested Stay Is of Reasonable Duration.**

A stay pending other proceedings is appropriate where they are likely to conclude within a reasonable time. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). CRMLS's request meets that standard. Briefing on the forum question in the S.D.N.Y. court will be complete by December 24, 2026, and the first phase of the requested stay will end when that court rules. Scheduling Order, S.D.N.Y. Action, ECF No. 18; *see also* S.D.N.Y. Action, ECF Nos. 10–12, 15–17. If the S.D.N.Y. court retains the case, the stay should continue pending resolution of the S.D.N.Y. Action, subject to periodic joint status reports.

**E. The Pending JPML Motion Further Supports a Stay.**

The pending JPML motion independently weighs heavily in favor of a stay. The MLS Defendants, including CRMLS, have asked the JPML to transfer this action and the 15 additional suits Compass filed on November 12, 2026, to the Southern District of New York for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. JPML Mot. at 1. Each action challenges materially identical MLS rules under Section 1 of the Sherman Act, rests on the same "See It First" theory, and was brought by the same plaintiff and lead counsel. The Panel's ruling will determine where this case proceeds. Proceeding in the interim would waste resources on pleading-stage motions, scheduling, and discovery disputes that the transferee court would have to revisit, and would invite "the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979); *see Rogoff v. T-Mobile USA, Inc.*, No. 2:21-CV-01157-BJR, 2021 WL 5279921 (W.D. Wash. Nov. 12, 2021) (staying the action entirely pending the JPML's transfer ruling). Nor would a stay prejudice Compass, as the JPML will rule "within a reasonable time." *Leyva*, 593 F.2d at 864. A brief stay will ensure that the forum question is resolved once, in a single court.

## III. THE CALIFORNIA BROKERAGES' CLAIMS MUST BE STAYED UNDER SECTION 3 OF THE FAA

The claims of the California Brokerages must also be stayed pending arbitration.[8] The California Brokerages are, in Compass's words, "the entities against which CRMLS enforces its rules." Compl. at ¶ 29. Ironically, Compass's own complaint relies on the decision in *Zillow Group, Inc. v. Midwest Real Estate Data LLC*, which compelled arbitration of Sherman Act claims challenging an MLS's adoption and enforcement of a listing rule under a narrower clause than the one at issue here. Compl. at ¶ 66 & n.44; Mem. Op. and Order at 12, 21-22, *Zillow Grp., Inc. v. Midwest Real Est. Data LLC*, No. 1:26-cv-05451, ECF No. 139 (N.D. Ill. Sept. 15, 2026) ("*MRED* Arb. Order").

### A. The California Brokerages Agreed in Writing to Arbitrate.

The EULA is a clear and unequivocal written agreement between CRMLS and each user, and MLS access is "conditioned on YOUR acceptance," given by clicking "I AGREE" beneath a capitalized notice. EULA preamble & at 9. That is a valid manifestation of assent. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (clear notice plus an unambiguous act of assent). The agreement is supported by consideration in the form of MLS access and mutual promises to arbitrate. EULA §§ II(A), XVII(A). It binds each user, including the California Brokerages, through their Designated Brokers, each of whom represents "full authority to bind" the brokerage. *Id.* § XVIII(E). And Compass's own allegations confirm formation—the California Brokerages "are participants in CRMLS." Compl. at ¶ 29; *see id.* at ¶¶ 12, 39.

### B. Every Claim Falls Within the Arbitration Clause.

The EULA's arbitration clause covers claims "relating in any way to, or arising out of" the EULA, "the MLS," "the Rules and Policies," "or any other alleged act or

---

[8] CRMLS invokes the EULA's arbitration clause only as to the California Brokerages; it does not seek to compel Compass, Inc.'s claims to arbitration.

omission by YOU or CRMLS." EULA § XVII(A). A claim need only "touch matters" covered by the agreement to be arbitrable. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Each count here challenges CRMLS's adoption and enforcement of certain Rules and Policies in the EULA: Counts I and II challenge the agreement "to implement and enforce" Rules 7.8 and 7.9, Compl. at ¶¶ 88, 91; Count III challenges their "adoption, maintenance, and enforcement," *id.* at ¶ 95; Count IV rests on the same conduct and seeks restitution of fines paid "under CRMLS Rules 7.8 and 7.9," *id.* at ¶¶ 102, 104, 107; and Counts V and VI target enforcement "through citations, fines, mandatory disciplinary hearings, and the threat of suspension and expulsion," *id.* at ¶¶ 111, 118. Indeed, the *MRED* court compelled arbitration of similar claims under a clause reaching only controversies "arising out of or relating to this Agreement," rejecting the argument that an alleged broader conspiracy took the claims outside it. *MRED* Arb. Order at 10–14, 20–21.

**C. Any Dispute as to Arbitrability Goes to the Arbitrator.**

The express terms of the EULA delegate to arbitration "the ability to arbitrate any claim or dispute arising out of this AGREEMENT" and "the enforceability of this arbitration section." EULA § XVII(A). That is clear and unmistakable delegation. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Regardless, the EULA's incorporation of the AAA Commercial Arbitration Rules independently suffices to delegate arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

Once delegation is shown, the Court may not decide arbitrability itself, and there is no "wholly groundless" exception. *Henry Schein*, 586 U.S. at 68–69. There is no second contract between CRMLS and the California Brokerages with a conflicting forum term, and no challenge has been raised that is directed to the delegation provision or that otherwise calls into question whether the parties agreed to send arbitrability disputes to the arbitrator. The Court therefore need only confirm that the parties formed an agreement to arbitrate. *See Coinbase, Inc. v. Suski*, 602

U.S. 143, 151–52 (2024) (court must decide challenges that bear on whether the parties agreed to arbitrate arbitrability, including challenges that apply equally to the delegation clause and the contract as a whole); EULA § XVIII(F).

**D. CRMLS Has Not Waived Arbitration.**

There can be no argument that CRMLS waived arbitration, which requires knowledge of the right to arbitrate and intentional acts inconsistent with that right. *Armstrong*, 59 F.4th at 1015; *see Morgan*, 596 U.S. at 419. CRMLS has done nothing inconsistent with arbitrating against the California Brokerages. This Motion is CRMLS's first filing in this Court, and CRMLS has sought no discovery or merits ruling here. *Cf. Martin v. Yasuda*, 829 F.3d 1118, 1125–26 (9th Cir. 2016) (finding waiver after seventeen months of litigation, including discovery and a motion to dismiss on a key merits issue), *abrogated in part on other grounds as recognized in Armstrong*, 59 F.4th at 1015. The S.D.N.Y. Action names only Compass, Inc. as a defendant, not the California Brokerages. *See* N.Y. Am. Compl. at 1; Compl. at ¶ 81 n.48.

**E. The Stay Is Mandatory as to the California Brokerages and Warranted as to Compass, Inc.**

Because the California Brokerages' claims are referable to arbitration, a stay of those claims is mandatory on CRMLS's request. 9 U.S.C. § 3; *Smith*, 601 U.S. at 478; *see MRED* Arb. Order at 22. The arbitral seat, San Bernardino County, lies within this District. EULA § XVII(A). And to the extent Compass, Inc.'s claims are not stayed for the reasons discussed *supra* Parts I and II, because every count is pleaded jointly on behalf of "Compass," and because Compass, Inc.'s alleged injury depends on CRMLS's enforcement of its rules against the California Brokerages, Compass, Inc.'s claims should be stayed pending arbitration. Compl. at ¶¶ 2, 29, 78–82; *see Leyva*, 593 F.2d at 863–64. The *MRED* court took exactly this approach, staying the claims against Compass, a non-signatory, because all of its alleged

conduct "will unquestionably be at issue in the arbitration." *MRED* Arb. Order at 22–23.

**CONCLUSION**

CRMLS respectfully requests that the Court (1) stay this action under the first-to-file rule and the Court's inherent authority pending the S.D.N.Y. court's resolution of Compass's pending motions to dismiss or, alternatively, to sever and transfer claims in the S.D.N.Y. Action and, if that court retains the case, pending final resolution of the S.D.N.Y. Action; (2) stay this action pending resolution of the JPML motion; (3) stay the claims of Compass California, Inc. and Compass California III, Inc. pending arbitration under 9 U.S.C. § 3; and (4) direct the parties to file a joint status report within 14 days of any ruling by the S.D.N.Y. court on Compass's motions, and every 90 days thereafter.

Dated: November 23, 2026

HOGAN LOVELLS CADWALADER US LLP

By: */s/ Claude G. Szyfer*

Michael Maddigan (Bar No. 163450)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars, Ste 1400
Los Angeles, CA 90067
(310) 785-4600
(310) 785-4601
michael.maddigan@hlc.com

Claude G. Szyfer (*pro hac vice* forthcoming)
Elai Katz (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000
claude.szyfer@hlc.com
elai.katz@hlc.com

Liam E. Phibbs (*pro hac vice* forthcoming)
Holden A. Steinhauer (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
liam.phibbs@hlc.com
holden.steinhauer@hlc.com

*Attorneys for Defendant California Regional Multiple Listing Service, Inc.*

## CERTFICATE OF COMPLIANCE

The undersigned, counsel of record for CRMLS, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 23, 2026

HOGAN LOVELLS CADWALADER US LLP

By: */s/ Claude G. Szyfer*

Michael Maddigan (Bar No. 163450)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars, Ste 1400
Los Angeles, CA 90067
(310) 785-4600
(310) 785-4601
michael.maddigan@hlc.com

Claude G. Szyfer (*pro hac vice* forthcoming)
Elai Katz (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000
claude.szyfer@hlc.com
elai.katz@hlc.com

Liam E. Phibbs (*pro hac vice* forthcoming)
Holden A. Steinhauer (*pro hac vice* forthcoming)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
liam.phibbs@hlc.com
holden.steinhauer@hlc.com

*Attorneys for Defendant California Regional Multiple Listing Service, Inc.*