# Exhibit E

**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| In re: Multiple Listing Service Rules Antitrust Litigation | MDL No. ____________ |
|---|---|

**THE MULTIPLE LISTING SERVICES' MOTION FOR TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movants (1) Arizona Regional Multiple Listing Service, Inc.; (2) BridgeMLS, Inc.; (3) Carolina Multiple Listing Services, Inc., d/b/a Canopy MLS; (4) Metrolist, Inc., d/b/a REcolorado; (5) MLSListings, Inc.; (6) North Carolina Regional MLS, LLC, d/b/a Hive MLS; (7) Triangle MLS, Inc., d/b/a Doorify, MLS; (8) California Regional Multiple Listing Service, Inc.; (9) OneKey MLS LLC; (10) Bay East Association of Realtors®; (11) Combined L.A./Westside MLS, Inc.; (12) Contra Costa Association of Realtors®; (13) Houston Realtors® Information Service, Inc.; (14) My Florida Regional MLS d/b/a Stellar MLS; (15) Regional Multiple Listing Service of Minnesota, Inc. d/b/a NorthstarMLS; and (16) San Diego Multiple Listing Service, Inc. (collectively, the "MLS Parties"), and any other party that may join this Motion, respectfully move the Judicial Panel on Multidistrict Litigation to transfer for coordinated or consolidated pretrial proceedings the actions identified on the Schedule of Actions, as well as any related actions later filed and treated as tag-along actions, to the United States District Court for the Southern District of New York and assign the proceedings to the Honorable Mary Kay Vyskocil for the reasons stated in the accompanying memorandum.

This 23rd day of November, 2026.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@rbh.com
ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536

***Attorney for Arizona Regional Multiple Listing Service, Inc.; BridgeMLS, Inc.; Carolina Multiple Listing Services, Inc., d/b/a Canopy MLS; Metrolist, Inc., d/b/a REcolorado; MLSListings, Inc.; North Carolina Regional MLS, LLC, d/b/a Hive MLS; and Triangle MLS, Inc., d/b/a Doorify, MLS***

Claude Szyfer
N.Y. Bar No. 2754166
claude.szyfer@hlc.com
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, New York 10281
Telephone: (212) 504-6000

***Attorney for California Regional Multiple Listing Service, Inc. and OneKey MLS LLC***

Thomas N. Jacobson
California Bar No. 55127
LAW OFFICES OF THOMAS N. JACOBSON
1650 Iowa Avenue, Suite 190
Riverside, California 92507
Telephone: (951) 682-7882
tom@tomjacobsonlaw.com

***Attorney for Bay East Association of Realtors®; Combined L.A./Westside MLS, Inc.; and Contra Costa Association of Realtors®***

John A. Boudet
Florida Bar No. 515670
john.boudet@gray-robinson.com
GRAY | ROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone: (407) 843-8880

***Attorney for My Florida Regional MLS d/b/a Stellar MLS***

Bradley C. Weber
Texas Bar No. 21042470
Brad.weber@troutman.com
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8497

***Attorney for Houston Realtors® Information Service, Inc.***

Mitchell A. Skinner
Minnesota Bar No. 0391547
mskinner@larsonskinner.com
LARSON SKINNER PLLC
5500 Nicollet Ave #19380
Minneapolis, MN 55419
Telephone: (612) 424-6775

***Attorney for Regional Multiple Listing Service of Minnesota, Inc. d/b/a NorthstarMLS***

Alexis S. Gutierrez
California Bar No. 190487
agutierrez@higgslaw.com
HIGGS | FLETCHER | MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101
Telephone: (619) 236-1551

***Attorney for San Diego Multiple Listing Service, Inc.***

Case Pending No. 67 Document 1-1 Filed 01/23/26 Page 1 of 23

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Multiple Listing Service Rules Antitrust Litigation | MDL No. _____________ |

**MEMORANDUM IN SUPPORT OF THE MULTIPLE LISTING SERVICES' MOTION FOR TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**Moving Parties:**

**(1) Arizona Regional Multiple Listing Service, Inc.;**

**(2) BridgeMLS, Inc.;**

**(3) Carolina Multiple Listing Services, Inc., d/b/a Canopy MLS;**

**(4) Metrolist, Inc., d/b/a REcolorado;**

**(5) MLSListings, Inc.;**

**(6) North Carolina Regional MLS, LLC, d/b/a Hive MLS;**

**(7) Triangle MLS, Inc., d/b/a Doorify, MLS;**

**(8) California Regional Multiple Listing Service, Inc.;**

**(9) OneKey MLS LLC;**

**(10) Bay East Association of Realtors®;**

**(11) Combined L.A./Westside MLS, Inc.;**

**(12) Contra Costa Association of Realtors®;**

**(13) Houston Realtors® Information Service, Inc.;**

**(14) My Florida Regional MLS d/b/a Stellar MLS;**

**(15) Regional Multiple Listing Service of Minnesota, Inc. d/b/a NorthstarMLS; and**

**(16) San Diego Multiple Listing Service, Inc.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

I. The MLS system and the Cooperation Rules .......... 3

II. Compass's nationwide campaign against the Cooperation Rules .......... 3

III. The eighteen pending actions .......... 5

ARGUMENT .......... 6

I. The eighteen actions should be centralized. .......... 6

A. The actions rest on the same core factual allegations and present the identical legal question .......... 6

B. Any differences among the MLSs' rules do not affect the core legal issue. .......... 8

C. Absent centralization, the risk of inconsistent rulings is high. .......... 10

D. Centralization would mitigate the likelihood of extreme inefficiencies. .......... 11

E. The same efficiencies cannot be obtained through voluntary coordination. .......... 12

II. The Southern District of New York is the appropriate transferee forum. .......... 12

A. This litigation arises from a centralized campaign coordinated at Compass's New York headquarters. .......... 13

B. The MLSs agree that New York is the most convenient forum. .......... 14

C. Judge Vyskocil is well situated to oversee this MDL. .......... 14

D. New York is a transportation hub easily accessible from all parts of the country. .......... 15

III. The Western District of North Carolina or the Middle District of Florida would also be appropriate forums for consolidation. .......... 16

CONCLUSION AND REQUEST FOR RELIEF .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*,
600 F. Supp. 3d 1345 (J.P.M.L. 2022)........................................................................ 10

*In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*,
637 F. Supp. 3d 1372 (J.P.M.L. 2022).......................................................................... 7

*In re Apple Inc. Smartphone Antitrust Litig.*,
737 F. Supp. 3d 1361 (J.P.M.L. 2024).................................................................... 9, 12

*In re Auto Body Shop Antitrust Litig.*,
37 F. Supp. 3d 1388 (J.P.M.L. 2014).......................................................................... 11

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
730 F. Supp. 3d 1371 (J.P.M.L. 2024)........................................................................ 11

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
148 F. Supp. 3d 1383 (J.P.M.L. 2015)........................................................................ 13

*In re Concrete & Cement Additives Antitrust Litig.*,
730 F. Supp. 3d 1381 (J.P.M.L. 2024).................................................................. 14, 16

*In re CoStar Grp., et al., Antitrust Litig.*,
2026 WL 2409364 (J.P.M.L. Aug. 11, 2026)............................................................... 13

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
607 F. Supp. 3d 1350 (J.P.M.L. 2022)........................................................... 10, 13, 16

*In re Folgers Coffee Mktg. & Sales Pracs. Litig.*,
532 F. Supp. 3d 1416 (J.P.M.L. 2021)........................................................................ 11

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
677 F. Supp. 3d 1379 (J.P.M.L. 2023)...................................................................... 7, 9

*In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
677 F. Supp. 3d 1370 (J.P.M.L. 2023).................................................................. 12, 13

*In re Granulated Sugar Antitrust Litig.*,
737 F. Supp. 3d 1370 (J.P.M.L. 2024).................................................................. 10, 12

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*,
568 F. Supp. 3d 1412 (J.P.M.L. 2021).......................................................................... 7

*In re Mobile Telecom. Tech., LLC Patent Litig.*,
222 F. Supp. 3d 1337 (J.P.M.L. 2016)........................................................................... 8

*In re OpenAI, Inc., Copyright Infringement Litig.*,
776 F. Supp. 3d 1352 (J.P.M.L. 2025)................................................................... 13, 16

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
737 F. Supp. 3d 1364 (J.P.M.L. 2024)......................................................................... 13

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
637 F. Supp. 3d 1377 (J.P.M.L. 2022)......................................................................... 11

*In re Subpoena Issued in ThePLS.com, LLC v. Nat'l Ass'n of Realtors*,
No. 1:26-mc-00525 (S.D.N.Y. Oct. 23, 2026)..................................................... 13, 14

*In re Valtrus Innov. Ltd. Patent Litig.*,
2026 WL 2409284 (J.P.M.L. Aug. 7, 2026) .................................................................... 8

*In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*,
597 F. Supp. 2d 1377 (J.P.M.L. 2009)......................................................................... 11

*In re: Ermi LLC ('289) Patent Litig.*,
396 F. Supp. 3d 1358 (J.P.M.L. 2019)........................................................................... 8

**INTRODUCTION**

This motion seeks to transfer and centralize eighteen separate actions pending in twelve courts across the country that raise the same legal question based on the same set of core facts.

The cases all center on Multiple Listing Services ("MLS"), which are cooperatives of competing real estate brokers who exchange real estate listings to create a comprehensive database that no individual broker could build alone, which benefits brokers as well as buyers and sellers of homes. Each of the sixteen MLSs that are parties in these cases has a substantively similar rule—if a broker wants access to all the real estate listings other brokers submit to the MLS, the broker must submit any publicly marketed real estate listing it has to the MLS database ("Cooperation Rules").

Compass, Inc., the largest residential real estate brokerage in the United States, is engaged in a nationwide campaign against the Cooperation Rules. Compass sent nearly identical demand letters to MLSs around the country claiming that each MLS's Cooperation Rules violated the antitrust laws and threatening litigation. Compass followed this by filing sixteen lawsuits, against sixteen different MLSs, in twelve different courts, all raising the same antitrust claim. In the other two cases, groups of MLSs have sought declarations that their Cooperation Rules are lawful under the antitrust law.

All sixteen of the MLSs involved in these cases agree—these cases should be centralized in the Southern District of New York before the Honorable Mary Kay Vyskocil.

These actions are textbook cases for centralization. They rest on the same core facts and legal theories. They arise from the same substantively identical demand letters that Compass sent to MLSs. The sixteen Compass complaints make identical arguments and allege the same underlying antitrust violations. Although Compass may argue that the MLSs' rules and enforcement differ, any differences are minor and do not affect the core issue in dispute.

Absent centralization, courts across the country will duplicate the same work and risk inconsistent rulings, not only on the merits, but also on the governing antitrust standards and issues involving discovery, privilege, and *Daubert*. The same motions, witnesses, documents, and experts will recur in every case. Voluntary coordination is unlikely to achieve the same efficiencies as a centralized action: different courts will set different schedules and decide substantive motions at different times.

The Southern District of New York is the appropriate transferee forum. This litigation is about a centralized and coordinated effort by Compass, headquartered in New York City, to reshape the residential real estate industry to its own advantage, and to the disadvantage of every other broker. New York is the most convenient location for Compass and its witnesses, and Compass itself has brought litigation in New York related to the Cooperation Rules. Because the MLSs are located across the country, no court is convenient for every MLS—but every MLS involved in these cases agrees that the Southern District of New York is the appropriate forum. The first-filed action involving these MLS Parties' Cooperation Rules was brought in the Southern District of New York. The district has a long track record of successfully managing MDLs and complex antitrust matters. The Honorable Mary Kay Vyskocil, who already presides over the two Southern District of New York actions, does not currently have an MDL, and is well situated to handle this one. And New York is a transportation hub easily accessible from every part of the country.

In the alternative, the cases should be centralized and transferred to either the Western District of North Carolina or the Middle District of Florida. Unlike other alternative venues, these courts have few MDLs, making them well situated to effectively take on this MDL.

## BACKGROUND

### I. The MLS system and the Cooperation Rules

An MLS is a cooperative of real estate brokers in a geographic area that, although they compete with one another to represent buyers and sellers, agree to cooperate through the MLS for the limited purpose of creating a comprehensive database of accurate, timely listing information that no individual broker could create. *See* Am. Compl. ¶ 2, *Ariz. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-09253 (S.D.N.Y. Oct. 30, 2026) ("ARMLS S.D.N.Y. Action"), ECF No. 28. A brokerage, like Compass, that wants access to that database joins the MLS and agrees to its rules, including the Cooperation Rules. *Id.* ¶ 3. The Cooperation Rules reflect each MLS's implementation of the National Association of Realtors' Clear Cooperation Policy ("CCP"), which provides that, "within one (1) business day of marketing a property to the public, the listing broker must submit the listing to the MLS for cooperation with other MLS participants." *Id.* ¶¶ 42–43.

The Cooperation Rules allow a broker to market a listing privately within its own office, but if the broker markets the listing publicly, the listing must be submitted to the MLS. *See, e.g.*, *id.* ¶¶ 46(a), 61(a); *see also* Compl. ¶ 4, *Compass, Inc. v. Cal. Reg'l Multiple Listing Serv., Inc.*, No. 5:26-cv-06121 (C.D. Cal. Oct. 16, 2026) ("CRMLS Cal. Action"), ECF No. 1. These rules protect the core function of the cooperative—ensuring broad and timely dissemination of listings—and prevent freeriding. ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 4.

### II. Compass's nationwide campaign against the Cooperation Rules

Compass is the largest brokerage in the United States and has its principal place of business in New York City. *E.g.*, *id.* ¶¶ 17, 59. Following its January 2026 acquisition of Anywhere Real Estate Inc., Compass has approximately 83,000 agents and a franchise network of more than 126,000 agents. *Id.* ¶ 59. Compass has consistently admitted that its size and

continued growth provide a competitive advantage through its control over a substantial inventory of for-sale properties. *Id.* ¶ 60.

In an attempt to capitalize on its substantial inventory and dominant market position, Compass engages in a nationwide strategy that involves publicly advertising its listings exclusively on Compass.com and Redfin.com for a period of time before submitting them to the MLS. *Id.* ¶ 61; CRMLS Cal. Action ECF No. 1 ¶¶ 57, 59–61. That strategy violates the Cooperation Rules and allows Compass to freeride at the expense of the cooperative: Compass brokers access and use all the other participants' listing data, but do not enter their own listings into the MLS. ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 61(b).

Compass's litigation strategy involves waging war against the Cooperation Rules. In September 2026, Compass sent substantively identical demand letters to numerous MLSs around the country. *See* Exhibits 1-3 (Demand Letters to ARMLS, CRMLS, and Canopy); *see also* ARMLS S.D.N.Y. Action, ECF No. 28 ¶¶ 62, 66–72. The letters all bore the same subject line—"Formal Legal Demand to Stop Fining/Punishing Agents for Public Marketing"—and all gave the recipient a deadline to confirm it would "not fine or punish a real estate professional for publicly marketing office exclusive listings" or face a federal antitrust lawsuit. *See id.* The letters framed Compass's claim in the same words and advanced the same legal theory. *Id.*

The letters asserted the same Sherman Act violation, demanded the same change in conduct, and warned that Compass would seek treble damages, fees, and costs if the MLSs did not capitulate. *Id.* Each letter closed by saying that Compass would "spend millions of dollars" suing the recipient "and other MLSs" to accomplish its goals. *Id.* And on September 30, 2026, Compass's CEO Robert Reffkin stated publicly that Compass would begin filing lawsuits against MLSs over the Cooperation Rules. ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 73.

### III. The eighteen pending actions

On October 5, 2026, California Regional Multiple Listing Service, Inc. ("CRMLS") filed suit in the Southern District of New York against Compass, seeking a declaration that its cooperation rules are lawful under federal and California state antitrust law. *Cal. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-08796 (S.D.N.Y. Oct. 5, 2026) ("CRMLS S.D.N.Y. Action"), ECF No. 1.[1] The CRMLS S.D.N.Y. Action was the first-filed federal court action in this dispute, but it is the culmination of at least several years of Compass' campaigning against many of the nation's MLSs. *See, e.g.*, CRMLS S.D.N.Y. Action, ECF No. 13 ¶¶ 16, 76. The case is currently pending before Judge Vyskocil.

Compass responded by suing CRMLS in the Central District of California eleven days later. On October 16, 2026, Compass and two California subsidiaries sued CRMLS in the Central District of California, challenging the same rule under the Sherman Act, the Cartwright Act, and related California statutory and common-law theories. CRMLS Cal. Action, ECF No. 1 ¶ 25.

On October 21, 2026, six MLSs filed a declaratory judgment action in the Southern District of New York. *Ariz. Reg'l Multiple Listing Serv., Inc. v. Compass, Inc.*, No. 1:26-cv-09253 (S.D.N.Y. Oct. 21, 2026), ECF No. 1. A seventh MLS joined a week later. *Id.*, ECF No. 28. Like CRMLS and OneKey, those MLSs seek declarations that their Cooperation Rules do not violate federal or state antitrust law. ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 8. That action, like the CRMLS S.D.N.Y. Action, is assigned to Judge Vyskocil.

---

[1] OneKey MLS LLC ("OneKey")—the largest MLS in New York state—later joined the CRMLS S.D.N.Y. Action as a plaintiff when the complaint was timely amended as of right. CRMLS S.D.N.Y. Action, ECF No. 13.

Most recently, on November 12, 2026, Compass filed fifteen lawsuits in eleven federal district courts. *See* Schedule of Actions. Those suits target each of the MLS plaintiffs in the New York actions that Compass had not yet sued, as well as seven additional MLSs across the country. Those fifteen Compass complaints are, in all material respects, identical. *Compare, e.g.*, *Compass, Inc. v. Arizona Regional Multiple Listing Service, Inc.*, No. 2:26-CV-10493 (D. Ariz. Nov. 12, 2026) ("ARMLS Ariz. Action"), ECF No. 1 *with Compass, Inc. v. My Florida Regional MLS, Inc.*, No. 6:26-cv-02651 (M.D. Fla., Nov. 12, 2026), ECF No. 1.

All told, there are eighteen cases raising the same legal question about the Cooperation Rules. The cases are all in preliminary stages. No responsive pleadings or dispositive motions have been filed. There have been no rulings or substantive orders in any case. The fifteen actions filed on November 12, 2026 have not progressed beyond the complaint. In the Southern District of New York, the parties have exchanged pre-motion letters concerning Compass's proposed motions to dismiss, sever, transfer, and stay. CRMLS S.D.N.Y. Action, ECF Nos. 10-12, 15-17; ARMLS S.D.N.Y. Action, ECF Nos. 30-31.

## ARGUMENT

### I. The eighteen actions should be centralized.

#### A. The actions rest on the same core factual allegations and present the identical legal question.

Section 1407 authorizes the Panel to transfer "civil actions involving one or more common questions of fact [that] are pending in different districts" to a single district "for coordinated or consolidated pretrial proceedings," upon a determination that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Each requirement is met here.

Cases that share common factual allegations are prime candidates for centralization, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413 (J.P.M.L. 2021). The commonality of legal theories and claims weighs further in favor of centralization. *See In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1381 (J.P.M.L. 2023); *In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (J.P.M.L. 2022).

Here, all eighteen actions arise from the same conduct and present the exact same legal question: whether the MLSs' Cooperation Rules requiring that a publicly marketed listing be submitted to the MLS violates Section 1 of the Sherman Act or related state antitrust laws.

The core factual allegations are the same in each case. Compass did not draft sixteen complaints addressing sixteen localized, differentiated disputes; it filed the same substantive complaint across the country, changing little more than the caption, rule numbers, and service area. These actions have essentially identical questions of fact; namely, the terms, impact, and enforcement of MLS Cooperation Rules; the motivations behind and market impact of Compass's business strategy; and whether either are anticompetitive.

The legal allegations are equally uniform. The Compass complaints allege the same three product markets—the Brokerage Services Market, Agent Services Market, and MLS Market; allege the same per se group-boycott theory under Section 1 of the Sherman Act; and allege in the alternative that the rules fail under the rule of reason. *E.g.*, ARMLS Ariz. Action ECF No. ¶¶ 40, 96–103. The complaints also seek the same core relief. *E.g.*, *id.* at Requested Relief. That overlap is more than enough to establish common factual questions under § 1407(a). Indeed, in a jurisdiction that required Compass to identify "cases that have common facts and claims," Compass identified all eighteen actions. *See Compass, Inc. v. Metrolist, Inc.*, No. 1:26-cv-06027

(D. Colo. Nov. 13, 2026), ECF No. 3; D. Colo. Civ. R. 3.2(b) ("Related cases are cases that have common facts and claims[.]").

That Compass and the MLSs occupy alternating plaintiff and defendant status in the Compass-filed actions and the MLS-filed declaratory judgment actions is no bar to transfer and centralization of the actions under § 1407. *E.g.*, *In re: Ermi LLC ('289) Patent Litig.*, 396 F. Supp. 3d 1358, 1359 (J.P.M.L. 2019) (granting § 1407 motion for a litigation that "consists of four patent infringement actions and one declaratory judgment action" and where the same party was "the plaintiff in the declaratory judgment action and a defendant in one of the infringement actions"); *see also In re Mobile Telecom. Tech., LLC Patent Litig.*, 222 F. Supp. 3d 1337, 1338 (J.P.M.L. 2016); *In re Valtrus Innov. Ltd. Patent Litig.*, 2026 WL 2409284, at *2 (J.P.M.L. Aug. 7, 2026). The operative complaint in the CRMLS S.D.N.Y. Action alleges that both CRMLS and OneKey's Cooperation Rules "are procompetitive and serve the fundamental purpose for which MLSs were created: ensuring that publicly marketed residential real estate listings are broadly shared and accessible to both participating agents and their customers, consistent with sellers' marketing choices, and that home buyers and the agents they choose have access to the most comprehensive inventory of available properties." CRMLS S.D.N.Y. Action, ECF No. 13 ¶ 13. The complaint in the Compass-filed action against CRMLS in the Central District of California is the other side of the same coin: it espouses the purported benefits to homeowners of Compass's "phased marketing strategy" and alleges that CRMLS Cooperation Rules "block competition among brokers and agents, [] homeowner choice," and Compass's implementing its preferred "phased marketing strategy." CRMLS Cal. Action, ECF No. 1 ¶¶ 2, 14–17.

**B. Any differences among the MLSs' rules do not affect the core legal issue.**

Any nuanced distinctions between how different MLSs implement their Cooperation Rules do not alter this analysis. "[T]ransfer under Section 1407 does not require a complete

identity of common factual issues or parties as a prerequisite to transfer"; rather, "additional facts or differing legal theories is not significant" if "the actions still arise from a common factual core." *In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1381 (J.P.M.L. 2023). For example, in *In re Apple Inc. Smartphone Antitrust Litigation*, the Panel centralized actions that shared "common questions of fact arising from allegations that Apple has monopolized or attempted to monopolize the smartphone market," refusing to exclude from centralization an action whose plaintiff sought "to represent only Apple Watch purchasers" and who argued that "there is only minimal overlap between the Apple Watch and iPhone claims." 737 F. Supp. 3d 1361, 1362–63 (J.P.M.L. 2024). The Panel found that, whatever their distinctions, "the iPhone and Apple Watch claims are based on the same premise," and that "the actions will involve substantial factual overlap and common discovery." *Id.* at 1363.

The same is true here, as these actions all arise from a "common factual core" and "the same premise": the nationwide conflict between Compass's "phased marketing strategy," on the one hand, and the Cooperation Rules on the other; and countervailing allegations that each harm competition. Compass may argue the reasonableness of each MLS rule depends on facts specific to that MLS, but these minor differences do not impact the core legal issue: that each rule imposes the same submission requirement once a listing is publicly marketed.

Indeed, Compass's own letters and complaints treat the rules as interchangeable: Compass demanded the same thing from every MLS and alleges the same per se theory against every MLS. CRMLS S.D.N.Y. Action, ECF No. 17 at 2; ARMLS Ariz. Action, ECF No. 1 ¶ 98. The parallel state-law claims add nothing, because the Cartwright Act, the Donnelly Act, and the other state antitrust statutes at issue track the Sherman Act. CRMLS S.D.N.Y. Action, ECF No. 17 at 2; *id.*, ECF No. 12 at 3; ARMLS S.D.N.Y. Action, ECF No. 28 ¶¶ 96–97, 101, 106.

Whatever MLS-specific discovery is needed can be more efficiently managed by a single transferee judge, which will ensure consistency in discovery procedures and rulings across all the cases.

**C. Absent centralization, the risk of inconsistent rulings is high.**

Guarding against inconsistent rulings is a central purpose of centralization. *In re Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (J.P.M.L. 2024); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022); *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, 600 F. Supp. 3d 1345, 1346 (J.P.M.L. 2022).

Here, Compass is asking more than a dozen judges in courts in seven different circuits to answer the exact same question—whether the Cooperation Rules violate antitrust law. The risk of inconsistent rulings on that question is high. Each court will be asked to decide whether the rules are subject to per se or rule-of-reason analysis; whether an MLS is a "combination" of competitors; whether Compass's pleaded markets are cognizable; whether Compass has antitrust standing; and whether the Cooperation Rules ultimately violate antitrust law. ARMLS Ariz. Action, ECF No. 1 ¶¶ 95–103; ARMLS S.D.N.Y. Action, ECF No. 28 ¶¶ 86–88. A patchwork of conflicting rulings on the lawfulness of essentially identical rules would subject MLSs, brokers, and consumers to different antitrust standards in neighboring marketplaces.

The risk of inconsistent rulings extends beyond the core merits question. The same procedural issues are likely to arise along the way in each case, such as the scope of discovery into Compass's strategy, privilege disputes, and *Daubert* challenges. This risk likewise weighs in favor of centralization. "Transfer under Section 1407 will" bring the "actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery

demands," *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014), and "[c]entralization will enable the transferee judge to make consistent rulings on [any] discovery disputes from a global vantage point," *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009).

**D. Centralization would mitigate the likelihood of extreme inefficiencies.**

Absent centralization, the same work will be done eighteen times. The Panel has recognized that centralization conserves party and judicial resources by eliminating duplicative Rule 12 briefing. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). Here, the legal briefing will be the same: each MLS will move to dismiss on the same grounds, and Compass will oppose on the same grounds.

Where, as here, discovery will involve many of the same witnesses, documents, and experts, centralization is warranted. *See In re Folgers Coffee Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1416, 1417 (J.P.M.L. 2021); *In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d at 1363; *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371, 1373 (J.P.M.L. 2024). In this case, the same Compass executives will be deposed in every case. The same written discovery and the same documents concerning Compass's strategy and demand-letter campaign will be requested and produced in every case. And the same expert testimony on the economics of the Cooperation Rules and seller marketing, if necessary, will be presented in every case.

Centralization would also ease an imbalance in litigation resources. Compass, the nation's largest brokerage with an annual revenue over $10 billion, has vowed to "spend millions" suing MLSs and has done so across sixteen different actions, while many defendant MLSs have more limited resources and employees. ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 64 & Exs. K–Q; *see* Schedule of Actions.

The fact that discovery may be needed from each MLS does not alter this analysis. It is far more efficient for discovery to be coordinated and managed by a single transferee judge than more than a dozen different judges. Having one judge manage discovery ensures an organized and efficient schedule, prevention of duplication, and consistency in discovery rulings.

**E. The same efficiencies cannot be obtained through voluntary coordination.**

Informal coordination is not a realistic alternative. The chance that eighteen actions in twelve courts will proceed on the same schedule is low, making coordination challenging at best. Each court will set its own schedule for Rule 12 motions and will decide those motions at different times and, potentially, in different ways. Different timetables for deciding preliminary motions will produce different discovery. An agreement that discovery in one case applies in all cases is not unreasonable in the abstract, but it is unworkable where the cases potentially will proceed on different tracks with different surviving claims. Because every action is at the pleading stage, centralization now will yield the greatest efficiency gains.

**II. The Southern District of New York is the appropriate transferee forum.**

Transfer to the Southern District of New York and assignment to the Honorable Mary Kay Vyskocil is appropriate. In selecting a transferee forum, the Panel considers, among other things, the location of parties and their witnesses, *In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 677 F. Supp. 3d 1370, 1371 (J.P.M.L. 2023); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (J.P.M.L. 2015); the number of actions pending in the district, *Granulated Sugar*, 737 F. Supp. 3d at 1371–72; *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355–56 (J.P.M.L. 2025); and the accessibility of the forum, *Deere*, 607 F. Supp. 3d at 1351. Each factor points to the Southern District of New York.

**A. This litigation arises from a centralized campaign coordinated at Compass's New York headquarters.**

The Panel regularly considers the location of parties and their witnesses in selecting a transferee forum. *Generac*, 677 F. Supp. 3d at 1371; *Bair Hugger*, 148 F. Supp. 3d at 1386.

This litigation is about a single, centralized, and coordinated effort by Compass to use its size and inventory to reshape the residential real estate listing industry. *See* ARMLS S.D.N.Y. Action, ECF No. 28 ¶¶ 1, 5, 60–61, 75. That effort was directed from Compass's headquarters in New York. CRMLS S.D.N.Y. Action, ECF No. 15 at 1–2; *e.g.*, *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 737 F. Supp. 3d 1364, 1366 (J.P.M.L. 2024) (selecting as the transferee district where the defendant is headquartered); *In re CoStar Grp., et al., Antitrust Litig.*, 2026 WL 2409364, at *2 (J.P.M.L. Aug. 11, 2026) (same). Compass's strategy and decision to threaten and sue MLSs nationwide all came from Compass's New York leadership, CRMLS S.D.N.Y. Action, ECF No. 15 at 1–2, ECF No. 12 at 3, as evidenced by the public statements made by Compass's CEO, ARMLS S.D.N.Y. Action, ECF No. 28 ¶ 73.

New York is therefore the most convenient location for Compass and its witnesses. Compass itself has said so. In moving to quash subpoenas issued in a case pending in the Central District of California, Compass represented that its CEO, Chief Strategy Officer, and President of Integrated Services all reside in New York City, that the Chief Strategy Officer "would be the individual at Compass who is most likely to have knowledge about NAR's Clear Cooperation Policy," and that its executives should not be required to testify in California. *In re Subpoena Issued in ThePLS.com, LLC v. Nat'l Ass'n of Realtors,* No. 1:26-mc-00525 (S.D.N.Y. Oct. 23, 2026), ECF No. 2 at 3, 7, 13. These executives are Compass's key decision makers and will undoubtedly be targets of discovery. *See, e.g.*, *In re Concrete & Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024) (finding the "Southern District of New York"

to be the "appropriate transferee district" because "[r]elevant documents and witnesses may be found in or near" the forum and multiple parties were "based there or nearby").

Compass itself previously selected the Southern District of New York to litigate these very issues. In *Compass, Inc. v. Zillow, Inc.*, Compass (represented by New York-based counsel) brought Sherman Act claims in the Southern District of New York challenging listing standards that excluded listings publicly marketed before submission to the MLS. No. 1:25-cv-05201 (S.D.N.Y.). The court denied Compass's motion for a preliminary injunction on February 6, 2026, after examining the history and purposes of the Clear Cooperation Policy. *Id.*, 2026 WL 321084, at *4–6, 21 (S.D.N.Y. Feb. 6, 2026). Compass cannot now claim that the Southern District of New York is inconvenient.

**B. The MLSs agree that New York is the most convenient forum.**

Because the MLSs are located across the country—from Arizona and California to Colorado, Texas, Minnesota, Florida, New York, and North Carolina—no single court is convenient for every MLS. But all MLSs involved in these cases agree that New York is the most convenient and appropriate forum. Nine MLSs have already filed suit against Compass in the Southern District of New York. *See* Schedule of Actions. The earliest-filed action is pending in that Court, and another related action is pending before the Court and before the same judge.

**C. Judge Vyskocil is well situated to oversee this MDL.**

The Honorable Mary Kay Vyskocil is well suited to oversee this MDL.

Judge Vyskocil already presides over both Southern District of New York actions, involving nine of the MLSs. Judge Vyskocil does not currently preside over an MDL.[2] She has

[2] *See* JPML, Pending MDL Dockets by District (Nov. 2, 2026), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-2-2026.pdf.

Case Pending No. 63 Document 1-5 Filed 11/21/25 Page 19 of 23

served as a federal district judge for seven years, previously served three years as a federal bankruptcy judge, and has significant experience with complex litigation both on the court and in private practice. *See, e.g.*, *In re Eyewear Antitrust Litig.*, No. 1:24-cv-4826) (S.D.N.Y.) (presiding judge); *Arcesium, LLC v. Advent Software, Inc.*, No. 1:20-cv-04389 (S.D.N.Y.) (presiding judge); *In re Nurture Baby Food Litig.*, No. 1:21-cv-1217 (S.D.N.Y.) (presiding judge).

The Southern District of New York has a long track record of effectively managing multidistrict litigation, including complex antitrust MDLs. It currently has four antitrust MDLs: *Keurig Green Mountain Single-Service Coffee Antitrust Litigation*, MDL No. 2542; *Interest Rate Swaps Antitrust Litigation*, MDL No. 2704; *Google Digital Advertising Antitrust Litigation*, MDL No. 3010; and *Concrete and Cement Additives Antitrust Litigation*, MDL No. 3097.

### D. New York is a transportation hub easily accessible from all parts of the country.

New York City is an easily accessible location for parties, witnesses, and counsel. The metropolitan area is served by three major international airports, with frequent nonstop service to Phoenix, Denver, Houston, Minneapolis–St. Paul, Orlando, Charlotte, Raleigh–Durham, Los Angeles, San Diego, and the San Francisco Bay Area. Accessibility is an important factor in the Panel's selection of a transferee forum. *See e.g.*, *Deere*, 607 F. Supp. 3d at 1351; *Concrete & Cement Additives*, 730 F. Supp. 3d at 1382 ("the Southern District of New York presents a convenient and accessible venue for this nationwide litigation"); *OpenAI*, 776 F. Supp. 3d at 1355–56 (describing the district as a "convenient and accessible venue"). The MLSs—which are the parties that would need to travel—all agree that New York is an accessible and convenient forum.

**III. The Western District of North Carolina or the Middle District of Florida would also be appropriate forums for consolidation.**

If the Panel does not select New York, it should select a transferee court that is easy to reach through a major airport and not so congested that this litigation would overburden the court. Two districts that already have one of the related actions fit that description: the Western District of North Carolina and the Middle District of Florida. Each of those districts has a major airline hub (Charlotte and Orlando) with nonstop service to every other city in which an action is pending.[3]

The Western District of North Carolina is a strong alternative. Compass's action against Canopy MLS is pending before the Honorable Kenneth D. Bell. *See* Schedule of Actions. Judge Bell has experience presiding over MDLs, including one that is concluded, *In re: Lowe's Companies, Inc., Fair Lab. Standards Act (FLSA) and Wage and Hour Litig.*, MDL No. 2947 (terminated in 2022), and another that is down to only six actions pending from 258 historical actions, *In re: Gardasil Prods. Liab. Litig.*, MDL No. 3036. The district has no other MDLs.[4] Judge Bell also has substantial recent experience overseeing high-profile antitrust actions, including in two cases that are now concluded. *FTC v. Novant Health, Inc.*, No. 5:24-cv-00028 (W.D.N.C.); *2311 Racing LLC v. NASCAR*, No. 3:24-cv-00886 (W.D.N.C.).

The Middle District of Florida would also be an appropriate transferee forum. Compass's action against Stellar MLS is pending in the Orlando Division before Judge Mendoza, who has served as a district court judge since 2014. *See* Schedule of Actions. He does not currently

---

[3] https://www.flightsfrom.com/CLT (Charlotte); https://flymco.com/us-service/ (Orlando).
[4] JPML, Pending MDL Dockets by District (Nov. 2, 2026) https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-2-2026.pdf (showing one pending MDL in the Western District of North Carolina).

preside over an MDL. Although the Middle District of Florida has historically handled several MDLs, it currently only has one.[5]

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, the MLS Parties respectfully request that the Panel enter an order: (1) transferring the actions listed on the attached Schedule of Actions, and any subsequently filed tag-along actions, to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings; (2) assigning the centralized proceedings to the Honorable Mary Kay Vyskocil; (3) designating the litigation as *In re: Multiple Listing Service Rules Antitrust Litigation*; and (4) granting such other and further relief as the Panel deems just and proper.

The MLS Parties request oral argument pursuant to Panel Rule 11.1.

[5] JPML, Pending MDL Dockets by District (Nov. 2, 2026) https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-2-2026.pdf (showing one pending MDL in the Middle District of Florida); JPML, Multidistrict Litigations Terminated Through September 30, 2023, https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2023_Terminated_Litigations_Report_0.pdf (showing that the Middle District had handled 19 MDLs through September 2023).

This 23rd day of November, 2026.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@rbh.com
ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536

***Attorney for Arizona Regional Multiple Listing Service, Inc.; BridgeMLS, Inc.; Carolina Multiple Listing Services, Inc., d/b/a Canopy MLS; Metrolist, Inc., d/b/a REcolorado; MLSListings, Inc.; North Carolina Regional MLS, LLC, d/b/a Hive MLS; and Triangle MLS, Inc., d/b/a Doorify, MLS***

Claude Szyfer
N.Y. Bar No. 2754166
claude.szyfer@hlc.com
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, New York 10281
Telephone: (212) 504-6000

***Attorney for California Regional Multiple Listing Service, Inc. and OneKey MLS LLC***

Thomas N. Jacobson
California Bar No. 55127
LAW OFFICES OF THOMAS N. JACOBSON
1650 Iowa Avenue, Suite 190
Riverside, California 92507
Telephone: (951) 682-7882
tom@tomjacobsonlaw.com

***Attorney for Bay East Association of Realtors®; Combined L.A./Westside MLS, Inc.; and Contra Costa Association of Realtors®***

John A. Boudet
Florida Bar No. 515670
john.boudet@gray-robinson.com
GRAY | ROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone: (407) 843-8880

***Attorney for My Florida Regional MLS d/b/a Stellar MLS***

Bradley C. Weber
Texas Bar No. 21042470
Brad.weber@troutman.com
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8497

***Attorney for Houston Realtors® Information Service, Inc.***

Mitchell A. Skinner
Minnesota Bar No. 0391547
mskinner@larsonskinner.com
LARSON SKINNER PLLC
5500 Nicollet Ave #19380
Minneapolis, Minnesota 55419
Telephone: (612) 424-6775

***Attorney for Regional Multiple Listing Service of Minnesota, Inc. d/b/a NorthstarMLS***

Alexis S. Gutierrez
California Bar No. 190487
agutierrez@higgslaw.com
HIGGS | FLETCHER | MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101
Telephone: (619) 236-1551

***Attorney for San Diego Multiple Listing Service, Inc.***